UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRISTEN PIERSON, | : |
| | : |
|     Plaintiff, | : Case No. 3:16-cv-01885(VLB) |
| | : |
| v. | : |
| | : September 8, 2017 |
| INFINITY MUSIC & ENTERTAINMENT, | : |
| INC., and DOES 1-5, | : |
| | : |
|     Defendant. | : |
| | : |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Twice Defendant Infinity Music & Entertainment, Inc. ("Defendant") falsely claimed it was the copyright owner of Plaintiff Kristen Pierson's images. The copyright notices transmitted with the images, as they appeared on Defendant's website, conveyed the relevant false copyright management information. Defendant knew, for certain, it was not the copyright owner of either image, yet offered no carve out to its broad claim of copyright. Now, it argues that its violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, is excused because the false copyright notices it published were actually meaningless.

Defendant's argument would be laughable were it not for a handful of District Court decisions that omitted consideration of the law governing placement of copyright notices under the Copyright Act. Those courts invented an interpretation of the phrase "conveyed in connection with", set forth in 17 U.S.C. § 1202(c), to mean physical proximity, without mention of the position of notice requirements of 17 U.S.C. § 401(c) and 37 C.F.R. 201.20. When the law governing copyright notices is read as a whole, the reasoning of those few decisions falls apart. Instead, they give way to those District Courts that agree

with Plaintiff: fixation of a copyright notice at the bottom of a web page claims copyright in all content published in that web page.  Defendant's Motion for Partial Summary Judgment (Dkt. No. 29) should be denied.

## 1.0     Factual Summary

Plaintiff, Kristen Pierson, is a professional photographer.  Def. 56(a)(1) Statement, ¶ 6.  On October 2, 2009, she authored a photograph of the band "The Soft Parade".  Def. ¶ 7.  Plaintiff holds copyright in that image, bearing Copyright Registration No. VA 00018887068.  Defendant's Local Rule 56(a)(1) Statement ("Def. Stmt.") ¶ 8; Complaint Ex. 11; Plaintiff's Local Rule 56(a)(2) Statement (Pltf. Stmt.") ¶ 8.  Later, in 2011, she authored a photograph of the band "Lotus Land".  Def. Stmt. ¶ 18.  Plaintiff holds copyright in that image, bearing Copyright Registration No. VA0001849561.  Def. Stmt. ¶ 19; Complaint Ex. 1; Pltf. Stmt. ¶ 19.

Defendant, Infinity Music & Entertainment, Inc., along with its related entities, own and operate two music venues in Connecticut.  Def. Stmt. ¶ 1.  To promote its live musical acts and sell concert tickets, it owns and operates a website at the domain <infinityhall.com>.  Def. Stmt. ¶ 2.  In 2014, Defendant approved and published a new website design.  Def. Stmt. ¶ 3. One of Defendant's decisions was to include a copyright notice at the bottom of every web page on the website.  Def. Stmt. ¶ 4.  Defendant expounds on this copyright claim in its Terms of Use, stating:

> This website contains material which is owned by or licensed to us.  This material includes, but is not limited to, the design, layout, look, appearance and graphics.  Reproduction is prohibited other than in accordance with the copyright notice, which forms part of these terms and conditions.

2

*See* Declaration of Jay M. Wolman ("Wolman Decl.") at <u>Exhibit 1</u>, Infinity Hall Terms of Use.[1]  It then states:

> Copyright Notice
>
> All materials contained on this site are protected by United States copyright law and may not be reproduced, distributed, transmitted, displayed, published or broadcast without prior permission of Infinity Music Hall & Bistro.  You may not alter or remove any trademark, copyright or other notice from materials contained within this site.
>
> You may download content, pages and downloadable materials from this website for your personal, non-commercial use only.

*Id.*  The copyright notice affixed to each page on the website includes individual pages created by Defendant to promote musical performances at its venues and sell tickets.  Def. Stmt. ¶ 5 and Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment ("Def. Memo") at pp. 4-5.

Both The Soft Parade and Lotus Land were booked to perform at Defendant's venues.  Def. Stmt. ¶ 9 & 20.  Defendant created a promotional webpage for each performance to sell tickets.  Def. Stmt. ¶ 10 & 21.  The webpage to promote the concert for the band The Soft Parade published an unlicensed copy of Plaintiff's photograph of that band.  Def. Stmt. ¶¶ 11-13 & Complaint Ex. 12.  Similarly, the webpage to promote the concert for the band Lotus Land published an unlicensed copy of Plaintiff's photograph of that band.  Def. Stmt. ¶¶ 22 & 24 and Complaint Ex. 2.  In each instance, Defendant affixed a copyright notice at the bottom of each respective page claiming copyright in the contents of the entire page, including the photograph.  Def. Stmt. ¶ 12 & 23.  As discussed more fully below, Defendant knew it lacked copyright in either image, consciously disregarded the rights of the photographer (when her identity was unknown and

---

[1] Available at: <http://www.infinityhall.com/Terms-of-Use/> (last accessed Sept 8, 2017).

when known), and conveyed the copyright notice falsely claiming ownership of the photographs in furtherance of its infringements.

2.0     Legal Standard

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the burden of Defendant, as movant, to prove that no factual issues exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). If the Court must "weigh evidence or assess the credibility of witnesses" summary judgment cannot be award, as "these determinations are within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). As set forth below, Defendant is not entitled to summary judgment.

3.0     Analysis

Defendant erroneously argues that it is not liable to Plaintiff for its two DMCA violations. First, it claims that the copyright notices, in which copyright to the subject webpages is claimed, whose placement are in accordance with the governing statutory and regulatory scheme, are ineffective. Second, it suggests it lacked intent to induce, enable, facilitate, or conceal infringement when it

4

voluntarily claimed copyright in the images despite knowing it lacked copyright in them or a license to publish the images. Neither argument is meritorious.

### 3.1 Defendant's Copyright Notice Claimed Copyright in Plaintiff's Photographs

The DMCA prohibits Defendant from knowingly "provid[ing] copyright management information that is false", "with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a)(1). Under the statute, "copyright management information" includes "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1201(c)(3). Defendant's notices of copyright on each of the subject webpages are false. There is no dispute that Defendant never was the copyright owner of either photograph.

Defendants argue that their notices of copyright are, in essence, ineffectual, for they claim such notices are not "conveyed in connection with" the works. Def. Memo at pp. 10-15. However, they ignore, and the cases they cited did not consider, the statutory and regulatory framework governing the placement of copyright notices.

As quoted above, Section 1201(c)(3) specifically contemplates the "notice of copyright" as containing the false copyright management information whose publication is prohibited under the DMCA. Under the Copyright Act governing "Position of Notice":

> The notice shall be affixed to the copies in such manner and location as to give reasonable notice of the claim of copyright. The Register of Copyrights shall prescribe by regulation, as examples, specific methods of affixation and positions of the notice on various types of works that will satisfy this requirement, but these specifications shall not be considered exhaustive

17 U.S.C. § 401(c). A website is generally a collective work for purposes of copyright law. *See, e.g., Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp.

2d 1146, 1166 n.11 (C.D. Cal. 2002); *iXL Inc. v. Adoutlet*, No. 01 C 0763, 2001 U.S. Dist. LEXIS 3784, at *27 (N.D. Ill. Mar. 29, 2001).  Separate contributions to collective works may be covered either by a single notice of copyright on the entire work or by each bearing its own notice.  *See* 17 U.S.C. § 404(a).

The regulations of the Register regarding placement of notice appear at 37 C.F.R. 201.20.  There is no dispute that although each "web page" at issue here is called a "web page", each are, in fact, multiple pages long.  Complaint Exs. 2 & 12.  Thus, under the regulations governing separate contributions appearing on multiple pages, the notice of copyright is acceptable if it is "immediately following the end of the contribution" or it "is reproduce prominently and is set apart from other matter on the page where it appears."  37 C.F.R. 201.20(f)(2)(iii) & (iv)(B).  The regulations also contain a catch-all, declaring that acceptable notices include other locations where "a person looking in one of those locations would be reasonably certain to find a notice".  37 C.F.R. 201.20(c)(2).

Copyright management information, including the notice of copyright, is likely to be found on the footer of a web page.  In fact, the international organization, known as the "World Wide Web Consortium" or "W3C", which is responsible for the development of HyperText Markup Language (HTML), used to create web pages, specifically recommends "copyright data" being placed in a footer of a web page.  *See* W3C, "HTML 5.1, W3C Recommendation" at § 4.3.8 (Nov. 1, 2016),[2] ("A footer typically contains information about its section such as who wrote it, links to related documents, copyright data, and the like.")  Thus, a copyright notice in a footer, as in the Defendant's web pages at issue, may be deemed to be immediately following the contribution, set apart on the page, or the location where a person looking would be reasonably certain to find such a notice.

---

[2] Available at: <https://www.w3.org/TR/html51/sections.html#the-footer-element> (last accessed Sept. 8, 2017), attached to Wolman Dec. at <u>Exhibit 2</u>.

A false copyright notice in a footer is the provision of false copyright management information under Section 1202(a). *See, e.g., John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *13 (N.D. Tex. May 1, 2013) (finding Section 1202(a) violated where web page footers conveyed false copyright management information); *Ranco Indus. v. Bos. Floor Mats*, No. H-10-5214, 2011 U.S. Dist. LEXIS 38811, at *8 (S.D. Tex. Mar. 31, 2011) (same). Defendant cites several cases for the proposition that the placement of a copyright notice in the footer of a webpage is insufficient to claim copyright in works appearing in the webpage under the DMCA. None of those cases discuss the interrelation between Section 404 of the Copyright Act, in conjunction with the implementing regulations at 37 C.F.R. 201.20, and Section 1202 of the DMCA, which is itself a part of the Copyright Act. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004) (observing that the DMCA is part of the Copyright Act). Such failure of those courts to consider the law governing placement of notices under the Copyright Act as a whole to inform what it means to provide false copyright management information in a notice of copyright under Section 1202 strips those cases of any persuasive value.

Moreover, the cases cited by Defendant misconstrue the caselaw that informs their decisions. For example, *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 449-50 (S.D.N.Y. 2002) is cited by *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1051-52 (S.D. Cal. 2016) and *GC2 Inc. v. Int'l Game Tech. PLC*, No. 16 C 08794, 2017 U.S. Dist. LEXIS 86009, at *18 (N.D. Ill. June 5, 2017). Yet, *Ward* did not suggest the footer copyright notice was not actionable under Section 1202(a) *per se*; rather, the plaintiff in that matter simply could not demonstrate the second element: intent. Similarly, *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. 03-4962, 2004 U.S. Dist. LEXIS 23052, at *45-46 (E.D. Pa. Nov. 12, 2004)

is also cited by *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 59-60 (D.D.C. 2015); again, the Section 1202(a) claim failed only for lack of intent.  Additionally, *GC2 Inc.*, *supra,* and *Pers. Keepsakes, Inc. v. PersonalizationMall.Com, Inc.*, No. 11 C 5177, 2012 U.S. Dist. LEXIS 15280, at *21-23 (N.D. Ill. Feb. 8, 2012), cited by *Drauglis, supra,* involved claims where the copyright notice was on a separate web page.[3]  Here, the false copyright notices are at the bottom of each web page.

Because placing a copyright notice at the bottom of each page is how, by law, copyright owner information as to web page content is conveyed, it is axiomatic that such copyright notice is "conveyed…with" the content.[4]  The cases cited by Defendant add in a requirement of closeness the statutory and regulatory framework do not contemplate; to the contrary, they conflict with the statutory and regulatory prescription.  "In cases of conflict between the statu[t]e and judicially imposed [requirements], the statutory rule will prevail." *Pa. Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys.*, No. 3:11-cv-650 (VLB), 2012 U.S. Dist. LEXIS 123735, at *20 (D. Conn. Aug. 30, 2012).  As the false copyright notice was conveyed with Plaintiff's copyright-protected images, Defendant is not entitled to summary judgment.

### 3.2 Defendant Intentionally Provided False Copyright Management Information to Conceal its Infringements

The copyright management information conveyed in the copyright notices distributed with the images on the Defendant's website was false, as set forth

---

[3] Under the Copyright Act, 17 U.S.C. § 404(a), a separate web page should suffice to serve as notice of copyright for the entire collective web site.  Thus, the cases cited by *Drauglis* are also wrongly decided as to the effect of a single page.  And, here, Defendant's Terms of Use page contains a copyright notice falsely claiming copyright in or license to publish Plaintiff's images.

[4] To the extent the Court agrees that closeness should be considered, Plaintiff does not agree that the copyright notice is too far away.  The determination of how close is close enough to decide an issue "bespeaks a fact question for the jury to decide." *Bezglasnaya v. Trump Entm't Resorts, Inc.*, No. 11-564 (JS), 2013 U.S. Dist. LEXIS 29871, at *16-17 n.3 (D.N.J. Mar. 4, 2013).

above. Defendant knew the information was false. And it provided and/or distributed that false copyright management information to aid infringement. Thus, Defendant is not entitled to summary judgment. *See Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 U.S. Dist. LEXIS 165007, at *36 (D. Kan. Dec. 9, 2015) citing 17 U.S.C. § 1202(a).

### 3.2.1 Defendant Knew that the Copyright Notices Conveyed False Copyright Management Information

Although Defendant did not know the identity of Plaintiff, knowledge of the true rights holder's identity is not required for Defendant to have violated Section 1202(a); the only requirement is that the information be false, and it was false to convey that the copyright was owned by Defendant. Defendant knew the broad copyright notice placed on every page was false with respect to content it did not own. The decision to place the false copyright notice at the bottom was a conscious one. As part of the Defendant's website development, Defendant was shown and approved a web page template that contained a model notice of copyright at the bottom. Transcript of Deposition of Robin Barrett ("Barrett Tx."), attached to Wolman Decl. as Exhibit 3, at 29:17-30:19; 35:22-36:25. Defendant approved the placement of this notice on every page of its website, even though it did not disclaim ownership of any of the content in the website.[5] *Id.* at 39:4-7. And, in furtherance of its claims of copyright, Defendant chose to publish its Terms of Use page, which did not carve out any content on the website from claims of copyright or license. Barrett Tx. at 43:8-11. Defendant made the conscious choice in drafting its Terms of Use to omit claims as to third-party

---

[5] In contrast, many websites, such as the one operated by the New Haven Register, also have a copyright notice in their footer, but then carve out and give proper attribution for photographs published on the page. *See, e.g.*, Wolman Dec. at Exhibit 4.

9

trademarks, but not as to claims implicating third-party copyright.  *Id*. 43:15-44:12; Wolman Decl. at <u>Exhibit 1</u>.

Defendant knew it was not the copyright holder in either the Lotus Land or the The Soft Parade image.  Defendant selected the Lotus Land image after the band's agent showed Defendant some pictures.  Barrett Tx. at 69:6-23.  Lotus Land did not purport to convey any license or right to use the Lotus Land image.  *Id*. at 211:1-9.  Neither Lotus Land nor its agent communicated that Defendant could use the image without the photographer's permission.  *Id*. at 212:20-213:8; 219:21-220:21; 221:5-222:1.  Simply because they were shown the pictures, Defendant opted to copy Plaintiff's picture, without making any reasonable inquiry as to whether it had a right or license to do so.  *Id*. at 69:22-70:7; 71:23-72:6.

Similarly, as to the picture of The Soft Parade, Defendant opted to copy Plaintiff's picture, without making any reasonable inquiry as to whether it had a right or license to do so.  *Id*. at 72:8-18.  The Soft Parade did not purport to convey any license or right to use the The Soft Parade image.  *Id*. at 223:17-224:17.  Defendant's employee acquired the image of The Soft Parade in communicating with the band or its agent; they were given access to a website without obtaining any information about the right to use or reproduce the image.  *Id*. at 207:10-208:25.  In fact, as a matter of practice, Defendant never reviewed any license agreement between a band and the photographer, it never asked for copies of such agreement, and never asked what the terms might be.  *Id*. at 75:8-17; 208:19-25.

Defendant admitted that none of the pictures of performers on its website were authored by it or its employees.  Barrett Tx. at 67:8-20.  All such images are either provided by the performing band, the band's agent, or a third-party image provider.  *Id*. at 66:11-23.  Defendant knew that it was not the copyright holder of

10

the Lotus Land image.  *Id*. at 159:6-11.  Defendant also knew it was not the copyright holder in The Soft Parade image.  *Id*. at 203:25-204:11.

Even though knowledge of the true rights holder's identity is not required under Section 1202(a), Defendant continued to publish the images with the false copyright notices upon learning her identity.  From March 15, 2016, when Plaintiff gave notice to Defendant that she was the copyright holder of the Lotus Land image, until September 28, 2016, Defendant continued to publish the image on its website with the false copyright notice.  Barrett Tx. at 153:12-169:25.  The choice not to continue such publication was a conscious decision.  *Id*. at 174:18-22; 175:1-176:12; 184:11-186:1.  Similarly, Defendant chose to continue publishing the picture of The Soft Parade with the false copyright notice despite having received notice on August 29, 2016, from Plaintiff that she was the copyright holder.  *Id*. at 179:1-182:17.  That image was only removed from Defendant's website because Web Solution chose to remove it;[6] it was not acting as an agent of Defendant in doing so.  *Id*. at 182:3-17.

Defendant's citation to *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 450 (S.D.N.Y. 2002) is inapposite.  In *Ward,* the defendant had a reasonable belief that it was the copyright owner in the subject work.  Thus, it did not have actual or constructive knowledge that the copyright notice contained false information.  In contrast, Defendant Infinity Music & Entertainment, Inc., never believed it was the copyright owner in either of Plaintiff's images nor did it have any reason for such belief.  Yet, despite such knowledge, Defendant nonetheless chose to publish web pages with their respective copyright notices, conveying false copyright management information.  Thus, Defendant, at all relevant times,

---

[6] Had Web Solutions refused to remove it, it would have been independently liable to Plaintiff under 17 U.S.C. § 512.  There is no indication that it removed the image specifically for the benefit of Defendant.

knew (and, at a minimum, should have known) it was providing false copyright management information. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) (intent in copyright law includes both actual and constructive knowledge).

### 3.2.2 Defendant's Distribution of False Content Management Information was in Aid of Infringement

Defendant does not argue that it did not infringe Plaintiff's copyrights in the images. Instead, it narrowly argues that because it did not know it was infringing *Plaintiff's* rights, it could not have violated Section 1202(a). However, as discussed above, the statute does not require that Defendant know whose rights it is violating. Defendant knew or should have known it was infringing *someone's* rights; that is all that is required to show intent. *See Fitzgerald Publ'g Co., supra*. Moreover, as set forth above, Defendant continued to publish both images with the copyright notices conveying false copyright management information, even after it was made aware that it was specifically infringing Plaintiff's copyright interests in the works.

Defendant's citation to *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 U.S. Dist. LEXIS 165007, at *38 (D. Kan. Dec. 9, 2015) demonstrates why it is not entitled to summary judgment. In *Tomelleri*, the district court observed that the "[d]efendant has invested significant resources to remove any designs on its website accused of intellectual property infringement." 2015 U.S. Dist. LEXIS 165007, at *38. In contrast, Defendant was sent multiple notifications of copyright infringement, from Plaintiff directly and from her counsel, yet took no action, not even consulting with any person or attorney with experience in copyright law, and continued to publish the image with the copyright notice. *See* Barrett Tx. at 156:5-

12

176:11; 179:1-187:1.  Unlike Zazzle, Inc., Defendant invested no resources to remove any infringing works.[7]

The continued infringements, published with the false copyright notice, after being specifically notified of such infringement, satisfies Section 1202(a). *Agence Fr. Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 U.S. Dist. LEXIS 112436, at *24 (S.D.N.Y. Aug. 13, 2014).  Even assuming, *arguendo,* Defendant's initial infringements were innocent, once Plaintiff put Defendant on notice, they had an affirmative duty to act, and the failure to do so demonstrates the requisite intent. *See Sheldon v. Plot Commerce*, No. 15 CV 5885 (CBA) (CLP), 2016 U.S. Dist. LEXIS 116135, at *49 (E.D.N.Y. Aug. 26, 2016).

Defendant consciously disregarded the rights of the photographer when it selected and published the infringed images, without considering whether such publication was infringement.  It knew at the time it published the infringed works that it was not the copyright owner.  It knew the copyright notices distributed with the infringed works claimed copyright ownership in the webpage content, necessarily including the works.  And, it continued to do so even upon learning of Plaintiff's specific claim of copyright ownership and Defendant's infringement thereof, without taking any reasonable measures to abate its violations. Therefore, Defendant may be found to have intentionally published the false copyright management information to facilitate its ongoing infringement of Plaintiff's images.

---

[7] Defendant also cites to *Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp. 3d 398, 407 (D. Mass. 2015).  That case has no application. The defendant in that case was found to have lacked intent where the placement of a watermark was not intended to convey authorship or ownership information. In contrast, Defendant Infinity Music & Entertainment, Inc., specifically used a copyright notice to convey ownership information.

## 4.0     Conclusion

The copyright notices falsely claimed copyright ownership in Plaintiff's works.  Because the notices containing false information were placed by Defendant in accordance with the statutory and regulatory scheme for copyright notices on websites, such notices were conveyed with the infringed works under Section 1202.  Defendant knew it lacked copyright in either work, despite initially not knowing who the true owner was, and it otherwise gave no consideration as to whether the publication was authorized by the photographer.  And, even after being notified of infringement, it refused to cease infringing or give any attribution to Plaintiff to remedy the false copyright notice.  Such actions demonstrate the intent to facilitate, enable, and conceal its infringements, rendering Defendant liable to Plaintiff under Section 1202(a).  As a matter of law, the undisputed material facts do not entitle Defendant to summary judgment as to Count Three of Plaintiff's Complaint.

WHEREFORE Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Partial Summary Judgment.

Dated: September 8, 2017            Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  (702) 420-2001
Fax: (305) 437-7662
ecf@randazza.com

*Attorney for Plaintiff*

Case No. 3:16-cv-01885-VLB

## CERTIFICATE OF SERVICE

I hereby certify that, on this 8th day of September 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  702-420-2001
Fax:  305-437-7662
ecf@randazza.com
